UNITED STATES of America, Appellee,

v.

Rinaldo TICCHIARELLI, Defendant, Appellant.

United States of America, Appellee,

v.

Bradley Oliver Bowen, Defendant, Appellant.

Nos. 98–1225, 98–1226.

United States Court of Appeals, First Circuit.

Heard Dec. 10, 1998.

Decided March 19, 1999.

Margaret D. McGaughey, Assistant U.S. Attorney, with whom James M. Moore, Assistant U.S. Attorney, Timothy W. Wing, Assistant U.S. Attorney, Jonathan R. Chapman, Assistant U.S. Attorney, and Jay P. McCloskey, U.S. Attorney, were on brief, for appellee.

Leonard I. Sharon and Sharon, Leary & Detroy on brief for appellant Rinaldo Ticchiarelli.

Eric D. Cook on brief for appellant Bradley Oliver Bowen. Bradley Oliver Bowen on brief pro se.

Before TORRUELLA, Chief Judge, STAHL, LYNCH, Circuit Judges.

LYNCH, Circuit Judge.

These consolidated appeals arise out of the criminal cases against co-conspirators Bradley Bowen and Rinaldo Ticchiarelli for smuggling drugs into this country from Jamaica. This is their second appearance in this court. In their first appeal, we vacated the sentences of both men and remanded for resentencing. *See United States v. Bowen*, 127 F.3d 9, 15 (1st Cir. 1997). These appeals from that resentencing raise important questions as to the doctrines which govern the scope of the proceedings on remand for resentencing, including whether the trial judge could properly consider, as part of the criminal history at resentencing, a new conviction which took place between the first and second sentencings.

Bowen, through counsel, argues that his second sentence was improper in that the district court (Hornby, J.) committed clear error in not revisiting its earlier, unappealed finding that Bowen was a manager, leader, or supervisor of the conspiracy under U.S.S.G. § 3B1.1(c). Bowen, pro se, argues that the underlying conviction should be vacated and that the district court erred in denying his Fed.R.Crim.P. 29 motion for a judgment of acquittal. None of the arguments has merit, and we affirm as to Bowen.

Ticchiarelli's appeal presents more difficult issues. He argues that the district court (Carter, J.) erred on remand in refusing to permit him to challenge the weight of the contraband used for purposes of calculating the Base Offense Level ("BOL"), a challenge that was concededly not made at the first sentencing and which is related to the issue remanded. Using the first issue as a fulcrum and arguing in the alternative, he also argues that counsel's performance at the first sentencing, if the weight issue has been waived, was constitutionally inadequate. Finally, he says that the court erred in factoring into his criminal history category a Florida conviction which occurred after his plea and first sentencing but before his resentencing. We vacate, on the first and last points, Ticchiarelli's sentence and remand for resentencing in accordance with this opinion.

I

**Prior Proceedings**

On their first appeal from their sentences based on characterizing the majority of the contraband drugs as "hashish oil," Bowen and Ticchiarelli argued that the use of the term "hashish oil" in Sentencing Guideline § 2D1.1 without a definition (prior to November 1995) was unconstitutional. Alternatively, they argued that the rule of lenity required any ambiguity in the definition of "hashish oil" to be resolved in their favor—namely, that they were entitled to a finding that the substance they smuggled, a marihuana-based substance, was not hashish oil for sentencing purposes.[1] Bowen did not, however,

---

1. Bowen also claimed error in the admission of certain evidence in his criminal trial and asserted that the fifty-to-one ratio between marihuana and hashish oil was arbitrary and irrational, thereby violating the Due Process

challenge the district court's finding that his role in the offense warranted an increase pursuant to Sentencing Guideline § 3B1.1(c). And Ticchiarelli chose not to challenge—either at the first sentencing or on appeal—the weight of the hashish oil that was attributed to him. *See Bowen,* 127 F.3d at 12.

The court ruled that the definition of hashish oil was ambiguous, and that the district court should have applied the rule of lenity and considered the substance at issue to be marihuana, not hashish oil. *See id.* at 13–14. This court rejected Bowen's other claims, vacated the defendants' sentences, and remanded the case for sentencing pursuant to the opinion. *See id.*

## II

### A. Bowen

#### 1. Role in the Offense

After trial Bowen was first sentenced as a manager, supervisor, or leader of the conspiracy under U.S.S.G. § 3B1.1. His first appeal raised a number of issues, but did not question the court's determination that he was a manager or leader.

■ At the second sentencing, Judge Hornby declined to reopen the managerial role finding, noting there had been no appeal from that decision at the first sentencing and that, under the law of the case doctrine, the district court was not required to reopen. The court was plainly correct. This is not a question of what leeway there is to explore on remand an issue directly related to the matter being remanded. This is rather a question of whether a party, not having appealed from an aspect of explicit findings and conclusions at sentencing, is free on remand as to a different unrelated issue to require the court to hear that aspect again.

■ The court's finding, Bowen says, reflects a flawed interpretation of the Guidelines, and he urges us to review the

Clause of the Fifth Amendment. *See Bowen,*

decision de novo. *See United States v. Camilo,* 71 F.3d 984, 986 (1st Cir.1995) (noting that the review of a district court's legal interpretation of the Guidelines is de novo). Bowen's argument misses the relevant point and applicable law. If we reached the merits of his argument we would recognize that "[t]he determination of an individual's role in committing an offense is necessarily fact-specific." *United States v. Cruz,* 120 F.3d 1, 3 (1st Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 729, 139 L.Ed.2d 667 (1998). Our review of the district court's findings, therefore, would be conducted with "considerable deference." *Id.* at 3. "Absent an error of law ... the sentencing court's determinations [would be] set aside only for clear error." *Id.* But the initial question is whether the district court was correct in not hearing the matter again. The court was correct on the law and to the extent it had discretion, there was no abuse of discretion.

■ In *United States v. Bell,* 988 F.2d 247 (1st Cir.1993), *("Bell II")* this court described the general rule as to whether a criminal defendant on a remand for resentencing may reopen explicit findings and conclusions which had been left in repose because there had been no appeal as to them:

The black letter rule governing this point is that a legal decision made at one stage of a civil or criminal case, unchallenged in a subsequent appeal despite the existence of ample opportunity to do so, becomes the law of the case for future stages of the same litigation, and the aggrieved party is deemed to have forfeited any right to challenge that particular decision at a subsequent date. Abandoning this prudential principle would threaten the important policy considerations underlying the law of the case doctrine, such as stability in the decision making process, predictability of results, proper working relationships

127 F.3d at 12.

between trial and appellate courts, and judicial economy.

*Bell II*, 988 F.2d at 250 (internal citations and quotation marks omitted).

In the proceedings prior to *Bell II*, the defendant, Richard Bell, had appealed the district court's finding that his conviction for receipt and possession of a firearm by a convicted felon was a "crime of violence." *See United States v. Bell*, 966 F.2d 703, 703–04 (1st Cir.1992) ("*Bell I*"). The district court's finding triggered a sentence enhancement under the Guidelines' career offender provision, *see* U.S.S.G. § 4B1.1, and was the sole ground for Bell's first appeal. *See id.; see also* U.S.S.G. § 4B1.4 (implementing the enhanced sentence provision of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), for defendants with at least three prior convictions for violent felonies or serious drug offenses). We agreed with Bell, vacated his sentence, and remanded for resentencing. *See Bell I*, 966 F.2d at 707. At resentencing, Bell "for the first time sought to challenge the validity of his prior convictions [for violent felonies] and, through that medium, his ACCA status." *Bell II*, 988 F.2d at 249. We held that the district court was not obligated on remand to entertain his belated challenge. *See id.* at 250–52.

Attempting to draw a meaningful distinction between this case and *Bell II*, Bowen seizes a clause from a recent decision of this court, and reaches for an argument. He quotes from *Flibotte v. Pennsylvania Truck Lines, Inc.*, 131 F.3d 21 (1st Cir.1997), *cert. denied*, ─── U.S. ───, 118 S.Ct. 1806, 140 L.Ed.2d 945 (1998), a civil case concerning whether a successor judge, "in the context of a single trial of a single case in a single court, with no intervening appeal," *id.* at 25, could depart from a prior holding:

> [T]he venerable law of the case doctrine ... states in the large that, *unless corrected by an appellate tribunal,* a legal decision made at one stage of a civil or criminal case constitutes the law of the

case throughout the pendency of the litigation.

*Id.* (emphasis added).

■ Bowen's argument is that the role-in-the-offense finding was not "corrected by an appellate tribunal"—because it was not raised by appellant—and so the law of the case doctrine cannot apply here. This argument misses the basic point of the doctrine, addressed directly in *Bell II:* findings and conclusions that are not appealed and are not related to the issues on appeal are treated as settled, unless they fall within an exception to the law of the case doctrine. *See Bell II*, 988 F.2d at 250–51; *see also United States v. Rivera–Martinez*, 931 F.2d 148, 151 (1st Cir.1991) (recognizing the presence of "exceptional circumstances" where there is new evidence in a subsequent trial, the controlling legal authority has changed, or the court's decision was clearly erroneous and would work a manifest injustice).

■ The law of the case doctrine does maintain some residual flexibility; this is so even within the particular strictures of a remand for resentencing. *See Bell II*, 988 F.2d at 250–51. One area of flexibility has to do with a blatant error that causes "serious injustice." *See id.* at 251. Bowen attempts to fit within the exception by asserting a blatant error in the district court's role-in-the-offense finding. If that alleged error remains uncorrected, he says he might be incarcerated for one year and seven months longer than the law permits. On this basis, Bowen tries to lodge his case within an exception to the doctrine. His efforts are unavailing because the record provides more than adequate factual support for the court's conclusion. This case does not present a case of manifest injustice. *See Cruz*, 120 F.3d at 3 (finding no clear error where the evidence, viewed as a whole, supported the district court's finding); *cf. United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (noting that a plain error, under Fed.R.Crim.P. 52(b), must have been both

prejudicial and obvious and affected the outcome of the district court proceedings).

### 2. Bowen's Pro Se Arguments

Bowen attempts to raise several arguments—that there was a constructive amendment of the indictment, that he was entitled to a Fed.R.Crim.P. 29 judgment of acquittal, and that his sentence was improper because he could not reasonably foresee the weight of the drugs attributed to him. None of these issues was reopened by the remand and the district court certainly did not abuse its discretion in not reconsidering them.

■ Bowen, pro se, makes two arguments on appeal related to the weight of the drugs. One argument goes to the foreseeability to Bowen of the weight of the drugs resulting from the first trip involving witnesses Carter and Luker. His counsel at resentencing questioned the accuracy of the estimates of the weights offered by those two witnesses. Judge Hornby found there was incentive to raise this issue at the first sentencing, and so the issue was waived. Indeed, the issue of plaintiff's connection to the first load of drugs was explicitly raised at the first sentencing. Judge Hornby also found that even if he could reopen, he would not do so because "no new evidence [had] been suggested to [him] to reduce the amount of the quantity." This latter ground suffices to sustain the court's exercise of its discretion.

■ In his appellate brief, Bowen makes a passing reference to the more generalized issue of whether the weight of the drugs was overstated in also including container weights. While, for reasons stated later, this issue was open on remand, no such argument was made to the district judge and there was no proffer of evidence. The issue has, for those reasons, been waived.

### B. Ticchiarelli

#### 1. Drug Weight Calculation

At his first sentencing, the district court attributed 393 kilograms of hashish oil and 48 kilograms of marihuana to Ticchiarelli. After applying the fifty-to-one conversion ratio to the hashish oil, the court attributed the equivalent of 19,698 kilograms of marihuana to Ticchiarelli. This amount corresponded to a BOL of 36, *see* U.S.S.G. § 2D1.1(c), and a guideline sentencing range of 188–235 months' imprisonment (assuming a criminal history category of I). *See* U.S.S.G. § 5A.

Our remand after the first appeal instructed the district court to treat the hashish oil as marihuana. *See Bowen*, 127 F.3d at 15. This change alone helped to produce a dramatically reduced sentence, as 441 kilograms of marihuana corresponds to a BOL of 28, *see* U.S.S.G. § 2D1.1(c), and a sentencing range of 78–97 months' imprisonment (assuming a criminal history category of I). *See* U.S.S.G. § 5A.

Ticchiarelli first questioned the calculated weight of the drugs at his resentencing. The assigned weight overcounts Ticchiarelli's liability, he claims, because it includes the weight of the containers as well as the contraband and it also includes some double counting of the contraband. He asked for an evidentiary hearing to offer proof of his claims. The court refused to consider the issue, finding that Ticchiarelli had waived this argument by failing to raise it at his initial sentencing. The court did not find the offer of proof insufficient; rather, the court found the entire topic foreclosed.

Ticchiarelli responds that there was no waiver because he lacked the incentive to question the weight at the first sentencing. According to Ticchiarelli, the district court's calculation of 19,698 kilograms of marihuana would have to have been in error by over 9,698 kilograms—or almost 22,000 pounds—for Ticchiarelli to have reduced his BOL. *See* U.S.S.G. § 2D1.1(c) (designating a BOL of 36 for at least 10,-

000 kilograms but less than 30,000 kilograms of marihuana).[2]

The government believes that because Ticchiarelli declined five opportunities (by the government's count) to challenge the weight of drugs attributed to him,[3] he has waived his right to any such challenge. The government also says that the law of the case doctrine bars Ticchiarelli's claim. Finally, the government contends that there was no abuse of discretion in the district court's decision not to reopen this issue on remand.

■ We review a district court's denial of an evidentiary hearing for abuse of discretion. *See David v. United States,* 134 F.3d 470, 477 (1st Cir.1998). Abuse of discretion includes errors of law. *See United States v. Snyder,* 135 F.3d 65, 67 (1st Cir.1998) (noting that a per se abuse of discretion occurs when a district court commits an error of law).

■ On direct appeal, the courts of appeal have statutory power under 28 U.S.C. § 2106 to "vacate" a sentence and to "remand the cause and . . . require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106; *see generally United States v. Rodriguez,* 112 F.3d 26 (1st Cir.1997). The "mandate rule" generally requires that a district court conform with the remand order from an appellate court. *See Bowen,* 127 F.3d at 15; *Bell II,* 988 F.2d at 251. The district court, in rejecting Ticchiarelli's plea for an evidentiary hearing before his resentencing, explained that this

court's remand precluded consideration of Ticchiarelli's new challenge. Nothing in our mandate directly required the district court to consider the weight issue or not to do so. We have on occasion directed that certain related issues be reconsidered on a sentencing after remand, but did not do so here. *See, e.g., United States v. Valle,* 72 F.3d 210, 218 (1st Cir.1995) (ruling that because the court's reversal of one count might affect the sentencing calculus in regard to the affirmed count, the case was remanded for "possible reconsideration of the sentence originally imposed" on the affirmed count); *see also United States v. Royal,* 100 F.3d 1019, 1026 (1st Cir.1996) (noting that if a defendant can show that a factual dispute exists which, if resolved in his favor, would entitle him to relief, then he would be entitled to an evidentiary hearing).

The court did not articulate the precise basis for its finding of waiver. Further, there was little precedent from this circuit to provide guidance. If the court meant that the weight calculation was plainly material at the first sentencing but Ticchiarelli chose not to address it on appeal, then we would agree that such circumstances produce a waiver. But the record does not suggest that is what happened here. The court may have meant that even if the issue of weight was not material in the first sentencing, and became material at resentencing only as a consequence of the remand, that there was a waiver nonetheless because Ticchiarelli failed to raise it in the first proceeding. If that latter mean-

---

**2.** Ticchiarelli's argument is better stated in terms of pre-conversion amounts. Because Ticchiarelli's challenge concerns the 393 kilograms of hashish oil attributed to him, he would have had to reduce that amount by at least 194 kilograms in order to reduce his BOL from 36 to 34. *See* U.S.S.G. § 2D1.1(c) (designating a BOL of 34 for more than 3,000 but less than 10,000 kilograms of marihuana). By contrast, once those 393 kilograms were treated as marihuana, Ticchiarelli needed to reduce the amount attributed to him by only 42 kilograms (or 425 pounds), a far lower evidentiary hurdle, to reduce his BOL from 28 to 26. *See* U.S.S.G. § 2D1.1(c) (designat-

ing a BOL of 26 for more than 100 but less than 400 kilograms of marihuana). Ticchiarelli has never asserted that he could reduce the amount of hashish oil by that much.

**3.** The government counts Ticchiarelli's missed opportunities as follows: (1) the initial objections to the Presentence Investigation Report's ("PSR") weight calculations, (2) the objections in the supplemental response to the PSR, (3) the evidentiary hearing held before Judge Hornby, (4) the original sentencing hearing, and (5) the first appeal to this court.

ing was intended, then the court applied an erroneous standard for what constitutes waiver.

There has been some debate among the circuit courts of appeals as to the proper standard for determining waiver under these circumstances. *Compare United States v. Moore*, 83 F.3d 1231, 1235 (10th Cir.1996) (allowing de novo resentencing after remand), *and United States v. Jennings*, 83 F.3d 145, 151 (6th Cir.1996) (same), *and United States v. Atehortva*, 69 F.3d 679, 685 (2d Cir.1995) (same), *and United States v. Ponce*, 51 F.3d 820, 826 (9th Cir.1995) (same), *and United States v. Cornelius*, 968 F.2d 703, 705 (8th Cir.1992) (same), *with United States v. Whren*, 111 F.3d 956, 960 (D.C.Cir.1997) (holding that only the issues related to the remand can be raised in a subsequent appeal), *and United States v. Parker*, 101 F.3d 527, 528 (7th Cir.1996) (same). The Sixth Circuit has identified the basic problem. It is irrational to create a system in which:

> [criminal] defendants would be forced to litigate every aspect of the sentencing report in the original hearing, even though irrelevant to the immediate sentencing determination in anticipation of the possibility that, upon remand, the issue might be relevant. Such "front loading" would unnecessarily increase the burden on the district courts and this court.

*Jennings*, 83 F.3d at 151. This reasoning led the Sixth Circuit to adopt what it characterized as a de novo approach to resentencing on remand. *See id.*

■■■■ The Seventh and D.C. Circuits have adopted a different view, finding that "only an issue arising out of the correction of the sentence ordered by [the court of appeals can] be raised in a subsequent appeal." *Parker*, 101 F.3d at 528; *see id.* ("A party cannot use the accident of a remand to raise in a second appeal an issue which could just as well have been raised in the first appeal because the remand did not affect it."); *see also Whren*, 111 F.3d at 959–60.[4] We are persuaded by the reasoning of the D.C. Circuit and hold, as it did, that "upon a resentencing occasioned by a remand, unless the court of appeals [has expressly directed otherwise], the district court may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision—whether by the reasoning or by the result." *Whren*, 111 F.3d at 960. In addition, we hold, along with *Whren*, that:

> A defendant should not be held to have waived an issue if he did not have a reason to raise it at his original sentencing; but neither should a defendant be able to raise an issue for the first time upon resentencing if he did have reason but failed nonetheless to raise it in the earlier proceeding. Under our approach a defendant may argue at resentencing that the court of appeals' decision has breathed life into a previously dormant issue, but he may not revive in the second round an issue he allowed to die in the first.

*Id.*

■■■■ Whether there is a waiver depends not, as the government suggests, on counting the number of missed opportunities (hearings, motions, etc.) to raise an

---

**4.** The D.C. Circuit states that it is rejecting the "de novo test" set forth in *Jennings* in favor of a "waiver test." *See Whren*, 111 F.3d at 959–60. It is far from clear that these approaches are always analytically distinct, despite the semantic differences. *Jennings*, after all, involved a fact situation which would have met the *Whren* test of non-waiver. *See Jennings*, 83 F.3d at 146–48; *Whren*, 111 F.3d at 959–60. The defendant in *Jennings* had no reason to raise the issue at the original sentencing; he had reason only on remand. *See Jennings*, 83 F.3d at 151. (At issue in *Jennings* was whether evidence of relevant conduct which made no difference to the BOL at the original sentencing could be introduced on remand, when it was of considerable consequence. *See id.*) Other circuits have also used the language of "de novo resentencing" in describing the ability of a district court resentencing on one count when other counts have been reversed to consider matters inexorably tied to the count of conviction on resentencing. *See, e.g., Atehortva*, 69 F.3d at 686.

issue, but on whether the party had sufficient incentive to raise the issue in the prior proceedings. *See United States v. de la Cruz–Paulino,* 61 F.3d 986, 994 n. 5 (1st Cir.1995) (noting, in the context of Fed. R.Crim.P. 12, that "government violations of Rule 12(d)(2) should excuse a defendant's failure to move to suppress evidence prior to trial ... since defendants have no incentive to move to suppress evidence that the government will not be introducing"); *see also Whren,* 111 F.3d at 960. This approach requires a fact-intensive, case-by-case analysis. Using such an analysis, we conclude there was no waiver and it was error not to consider the proffer as to the weight issue on remand.

The record here provides ample explanation for Ticchiarelli's earlier silence. After Ticchiarelli pled guilty in September 1995, his co-defendant Bowen went to trial, before Judge Hornby, and was convicted on February 2, 1996. Ticchiarelli joined Bowen's objection to the PSR's determination that the contraband was hashish oil, and the cases were consolidated to determine how the court should denominate the substance under the Sentencing Guidelines. *See United States v. Ticchiarelli,* 943 F.Supp. 77, 77–78 (D.Me.1996), *vacated sub nom United States v. Bowen,* 127 F.3d 9 (1st Cir.1997). Judge Hornby conducted an evidentiary hearing for these cases on August 9, 1996. His order, issued on October 2, 1996, held that the substance was hashish oil. *See Ticchiarelli,* 943 F.Supp. at 83. The District Court Clerk's Office then scheduled Bowen's sentencing before Judge Hornby and Ticchiarelli's sentencing before Judge Carter. *See id.*

By the time of Ticchiarelli's *first* sentencing on November 7, 1996, the district court had already issued a final ruling, memorialized in a published order, that the contraband was hashish oil. Ticchiarelli had no incentive, given such a ruling, to challenge the determined weight of the contraband by raising an argument that the weight included the weight of containers and some double counting. That is

because, even if the weight were lessened to take account of containers and double counting, it would make no difference under the hashish oil weight ranges, if he could not reduce the amount of hashish oil by more than 194 kilograms. Ticchiarelli claims that he could not reduce the weight by this amount, and the district court did not hear any evidence on the question. Absent some evidence, we cannot say there is nothing to Ticchiarelli's claim. Ticchiarelli's challenge may, in contrast, make a difference in the marihuana weight ranges. Our waiver doctrine does not require that a defendant, in order to preserve his rights on appeal, raise every objection that *might* have been relevant if the district court had not already rejected the defendant's arguments. *See Atehortva,* 69 F.3d at 684–85 (permitting government to make argument at resentencing when there was no reason to do so at first sentencing).

Ticchiarelli says he is able to produce evidence as to weight of containers and double counting which will succeed in subtracting several months from his sentence, evidence which he had no incentive to raise earlier. That possibility persuades us that the district court abused its discretion in finding a waiver and refusing to consider the proffer. We foreshadow nothing as to whether the evidence of over-weighing is to be credited when the district court considers it on remand.

### 2. Florida Conviction

Ticchiarelli claims that the Maine court improperly considered his sentence arising out of a 1997 conviction in Florida to be a "prior sentence" for purposes of U.S.S.G. § 4A1.1(a). Following § 4A1.1(a), the Maine district court added three points to Ticchiarelli's criminal history, raising his criminal history category from I to II. Ticchiarelli was convicted and sentenced in Florida after his first Maine sentencing but before his resentencing on remand in Maine. He makes several arguments in support of his position. He argues that

the Florida and Maine convictions are related and should be counted as one sentence, not as a "prior sentence" under U.S.S.G. § 4A1.2(a)(1). Next, he says that the Maine court lacked the authority to consider post-sentencing conduct and that doing so amounted to impermissible double counting. He also asserts that the Maine court infringed the protections afforded him by the Double Jeopardy Clause of the Fifth Amendment, a claim which we need not reach.

### a. Related Cases

■ Ticchiarelli claims that the Florida and Maine cases are related. Under the Guidelines, sentences imposed in "related cases" are to be treated as one sentence for purposes of § 4A1.1(a). *See* U.S.S.G. § 4A1.2(a)(2). Section 4A1.1(a) requires a sentencing court to "[a]dd 3 [criminal history] points for each prior sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a). Ticchiarelli cites § 4A1.2(a)(2) of the Sentencing Guidelines to support his argument that the Florida and Maine cases are related, but he misreads the Guidelines. By using the term "related cases," the Guidelines refer "to the relationship between prior sentences and whether prior sentences should be counted as one sentence in a defendant's criminal history." *United States v. Troncoso*, 23 F.3d 612, 616 (1st Cir.1994). Section 4A1.2(a)(2) does not govern the court's evaluation of "whether a prior sentence should be viewed as part of the instant offense." *Id.* (citing *United States v. Beddow*, 957 F.2d 1330, 1337 (6th Cir.1992) (same); *United States v. Walling*, 936 F.2d 469, 471 (10th Cir.1991) (same)). Ticchiarelli's claim that his cases are related has no merit.

### b. Lack of Authority

Ticchiarelli argues that the Maine court on remand lacked the authority to consider the intervening Florida sentence as a "prior sentence" and that it engaged in impermissible double counting by doing so. We reach only the first of these arguments.

The Florida court sentenced Ticchiarelli on November 7, 1997, several weeks after the first Maine sentence had been vacated, but considered the Maine conviction as a "prior sentence" pursuant to U.S.S.G. § 4A1.2(a)(4). Ticchiarelli admits that this was proper at the time. *See* U.S.S.G. § 4A1.2(a)(4) (instructing a district court to count a conviction, even when no sentence has yet been imposed, as a prior sentence under § 4A1.1(c)). Ticchiarelli asserts that the Florida court then added one criminal history point to his criminal history category ("CHC"). *See* U.S.S.G. § 4A1.2(4) (directing that where there has been a conviction but no sentence, a district court should add one point to a defendant's CHC if a sentence resulting from that conviction would otherwise be countable).

On resentencing in Maine, the Maine court assumed that the defendant's CHC was I but considered the Florida sentence, imposed a few months earlier, as a prior sentence pursuant to U.S.S.G. § 4A1.2(a)(1), and added three criminal history points to Ticchiarelli's total. This raised Ticchiarelli's CHC from I to II. Ticchiarelli argues that since the Maine sentence originally imposed was a prior sentence to the Florida sentence, then the Florida sentence cannot be a "prior sentence" to the Maine sentence, even at resentencing. Ticchiarelli says that the guidelines require a sentencing court to focus its inquiry on when a sentence was first imposed. Ticchiarelli cites to *United States v. Flowers*, 995 F.2d 315 (1st Cir. 1993). But *Flowers* involved a very different problem. In *Flowers*, the court considered whether a district court could consider a sentence *previously imposed* for a crime *committed after* the offense at issue before the court, where the conviction (for the previous crime) was obtained before the immediate sentencing. *See id.* at 317. *Flowers* offers no help here.

The government argues that at the time of the resentencing after remand, the Florida sentence was literally a "prior sentence" and so the Maine court acted appropriately in considering it under U.S.S.G. § 4A1.2(a)(1). The government also argues the issue should not be reached because the challenged sentence falls within the range that would apply if the Florida sentence had not been considered and that another remand from this court is therefore unwarranted. We turn first to the government's contention that we should not reach the legal question involved.

█ The government argues that even though consideration of the Florida sentence produced a sentencing range of 108 to 135 months' imprisonment, the actual sentence imposed was 121 months' imprisonment. The government emphasizes that this sentence falls within the sentencing range of 97 to 121 months' imprisonment which would have been used if the Florida conviction had not been considered. That is true, but insufficient. We have previously held that "only where it is reasonably clear from the record that the trial judge would have imposed the same sentence under either range that an appellate court should leave the sentence intact." *United States v. Ortiz*, 966 F.2d 707, 718 (1st Cir.1992). It is not "reasonably clear" that the same sentence would result, and so we move to the merits of Ticchiarelli's claim.

█ Because the issue of the meaning of "prior sentence" as defined in U.S.S.G. § 4A1.2(a)(1) is one of law, we review the district court's determination *de novo*. *See United States v. Sherwood*, 156 F.3d 219, 220 (1st Cir.1998). We begin by examining the plain language of the guideline definition. Section 4A1.2(a)(1) says that "[t]he term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere,* for conduct not part of the instant offense." The phrase at issue here is "any sentence previously imposed." There is no dispute that

a "prior sentence" (or a conviction pending sentencing, which is treated as a prior sentence under U.S.S.G. § 4A1.2(a)(4)) must have been imposed at some point *before* the sentencing at issue. In this sense, the word "prior" is given its common meaning as being "earlier in time or order" and "preceding temporally." *Webster's Third New International Dictionary* 1804 (1993); *see also United States v. Perrotta*, 42 F.3d 702, 704 (1st Cir.1994) (stating that, "in the literal words of the guideline," a sentence imposed in 1978 was prior to a conspiracy which began in 1984); *United States v. Troncoso*, 23 F.3d 612, 616 (1st Cir.1994) (noting that a sentence imposed three months prior to the sentencing in the instant offense was a "prior sentence" pursuant to U.S.S.G. § 4A1.2(a)(1)). The question is "prior" to what, the original sentence or the resentencing sentence?

In our view, the most sensible reading is that the guidelines' reference to "prior sentence" means, in this context, a sentence which is prior to the original sentence which was vacated and remanded only for resentencing. Thus, the district court erred in considering the Florida sentence. Such a reading is most consistent with the mandate rule, discussed extensively earlier, statutes limiting resentencing, and with the distinction the law has long drawn between remands where a conviction has been vacated and remands where only a sentence has been vacated.

█ The mandate rule, as we have described it, does not permit de novo resentencing as to all aspects of a sentence when a sentence has been vacated. The Florida conviction is neither related to the reason for the remand nor does it fit within an exception to the mandate and law of the case doctrines. *See Bell II*, 988 F.2d at 251.

The ability of a court to modify a term of imprisonment is governed by 18 U.S.C. § 3582(c), which provides, in relevant part:

The court may not modify a term of imprisonment once it has been imposed except that . . . (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure.

18 U.S.C. § 3582(c). Like the mandate rule, these statutory restrictions on the power to resentence suggest that the term "prior sentence" in U.S.S.G. § 4A1.2(a)(1) cannot mean an intervening sentence imposed after the original sentencing. A contrary reading implies a greater scope of remand, as though all matters were reopened, regardless of the reason for the remand. But as the statute makes clear, this is not the case. *See* 18 U.S.C. § 3582(c) (regarding the act of resentencing after a sentence has been vacated on appeal as a "modification" and not the entry of an entirely new judgment); *see also* Fed.R.Crim.P. 35(a) (making clear that the imposition of a legally erroneous sentence is not a legal nullity and that the act of resentencing after a sentence has been vacated on appeal involves mere "correction" of the sentencing judgment and not the entry of an entirely new judgment).

The third reason for our reading is that it more naturally fits into the distinction between what is open on remand after a conviction has been vacated and what is open on remand when only a sentence has been vacated. This distinction is made both in the pre-Guidelines and post-Guidelines eras.

Where the conviction was vacated, in the pre-Guidelines era, there was no inherent prohibition on a trial judge considering intervening criminal conduct between first and second sentencings. In *North Carolina v. Pearce*, 395 U.S. 711, 723, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) the Court stated:

A trial judge is not constitutionally precluded . . . from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the new trial that may have thrown new light upon the defendant's life, health, habits, conduct, and mental and moral propensities.

*Pearce*, 395 U.S. at 723, 89 S.Ct. 2072 (quoting *Williams v. New York*, 337 U.S. 241, 245, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)). The Court explained that permitting the trial judge to consider such evidence after retrial was consistent with the notion, accepted in *Williams*, "that the punishment should fit the offender and not merely the crime." *Id.* (quoting *Williams*, 337 U.S. at 247, 69 S.Ct. 1079) (internal quotation marks omitted). Of course, this was subject to the constitutional limit that vindictiveness must have played no role in the resentencing, *see id.* at 724, 89 S.Ct. 2072, but no claim of vindictiveness is or could be made here. *Pearce* involved starting anew after a conviction no longer existed, *see id.* at 713, 89 S.Ct. 2072; by contrast here the conviction stands and only the sentence was vacated in order that it could be corrected.

Post–Guidelines, it is express, for example, that any sentence resulting from convictions which have been reversed or vacated may not be counted as "prior sentences." [5] *See* U.S.S.G. § 4A1.2, application note 6. The Guidelines thus appear to preserve the dichotomy between resentencing after a conviction has been vacated and resentencing after a sentence has been vacated but the conviction left intact.

Although not cited to us by either party, a decision of the Ninth Circuit reaches the opposite conclusion. *See United States v. Klump*, 57 F.3d 801, 803 (9th Cir.1995). The Ninth Circuit has recently recognized the validity of *Klump*, although noting that

---

**5.** Of course, our case does not involve the issue of consideration of an intervening conviction and sentence as a "prior sentence" when there is a new conviction and resen-

tencing after a conviction is vacated. Nor do we address the different issue of post-sentencing rehabilitative conduct.

this conclusion was made in dicta. *See United States v. Green*, 152 F.3d 1202, 1206–07 (9th Cir.1998); *accord United States v. Real–Hernandez*, 90 F.3d 356, 360 (9th Cir.1996) (citing *Klump*). *But see United States v. Jones*, 114 F.3d 896, 897 (9th Cir.1997) (distinguishing *Klump* and questioning its reasoning). *Klump* does so without much discussion and is evidently premised on the Ninth Circuit's view that the scope of resentencing even on a limited remand is de novo. *See Klump*, 57 F.3d at 802. We have rejected that premise and reject the *Klump* conclusion.[6]

Our conclusion that the district court erred rests on our interpretation of U.S.S.G. § 4A1.2(a)(1), as informed by the mandate rule, 18 U.S.C. § 3582(c), and Fed.R.Crim.P. 35(a). If we are wrong, the Sentencing Commission can specify a different interpretation.

### Conclusion

Bowen's sentence is affirmed. Ticchiarelli's sentence is vacated and remanded for resentencing in accordance with this opinion. The district court should consider whether the proffer warrants conducting an evidentiary hearing on Ticchiarelli's objection to the calculation of the drug weight on the basis that it included the weight of containers and some double counting and resentence him based upon the conclusions drawn. The district court may not consider Ticchiarelli's Florida sentence as a prior sentence at resentencing.

**6.** Another Ninth Circuit case, *United States v. Green*, 152 F.3d 1202 (9th Cir.1998), suggests that somehow *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), requires a district court to consider on a limited remand for resentencing evidence of post-initial-sentence matters so long as they are not forbidden factors. *See Green*, 152 F.3d at 1207. *Koon* did not address U.S.S.G. § 4A1.2(a)(1), addressed a different problem, and we are, in any event, unpersuaded by this theory.