**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 09-4705**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

AHMED OMAR ABU ALI, a/k/a Reda, a/k/a Hani, a/k/a Abi Umar, a/k/a Ashraf, a/k/a Abu Abdullah,

        Defendant - Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Gerald Bruce Lee, District Judge.  (1:05-cr-00053-GBL-1)

---

Argued:  December 9, 2010       Decided:  February 1, 2011

---

Before TRAXLER, Chief Judge, and WILKINSON and MOTZ, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Alice L. Fontier, JOSHUA L. DRATEL, PC, New York, New York, for Appellant.  Stephen Michael Campbell, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Joshua L. Dratel, JOSHUA L. DRATEL, PC, New York, New York, for Appellant.  Neil H. MacBride, United States Attorney, Marla B. Tusk, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ahmed Omar Abu Ali was convicted by a jury of nine offenses based on his conspiracy to commit terrorist acts against the United States, including one count of conspiracy to assassinate the President in violation of 18 U.S.C. § 1751 and one count of conspiracy to commit aircraft piracy in violation of 49 U.S.C. § 46502(a)(2). Abu Ali's convictions stemmed from his affiliation with an al Qaeda terrorist cell in Medina, Saudi Arabia. While Abu Ali's offenses gave rise to an advisory Guidelines sentence of life imprisonment, the district court imposed a below-Guidelines sentence of thirty years.

In United States v. Abu Ali, 528 F.3d 210 (4th Cir. 2008), we affirmed all of Abu Ali's convictions but vacated and remanded the case for resentencing. On remand, the district court sentenced Abu Ali to a term of life imprisonment. Abu Ali now appeals that sentence, arguing that it was procedurally and substantively unreasonable under Gall v. United States, 552 U.S. 38 (2007), and that it violates various constitutional provisions. Finding Abu Ali's arguments to be without merit, we affirm the judgment of the district court.

I.

The facts of this case are detailed in our previous opinion, so we need not repeat them here. See United States v.

2

Abu Ali, 528 F.3d 210, 221-26 (4th Cir. 2008). With respect to the trial proceedings, it suffices for purposes of this appeal to note the nine charges on which Abu Ali was convicted:

- Conspiracy to provide material support and resources to a designated foreign terrorist organization (al-Qaeda), in violation of 18 U.S.C. § 2339B (Count 1);
- Providing material support and resources to a designated foreign terrorist organization (al-Qaeda), in violation of 18 U.S.C. § 2339B (Count 2);
- Conspiracy to provide material support to terrorists, in violation of 18 U.S.C. § 2339A (Count 3);
- Providing material support to terrorists, in violation of 18 U.S.C. § 2339A (Count 4);
- Contributing services to al-Qaeda, in violation of 50 U.S.C. § 1705(b) and 31 C.F.R. § 595.204 (Count 5);
- Receiving funds and services from al-Qaeda, in violation of 50 U.S.C. § 1705(b) and 31 C.F.R. § 595.204 (Count 6);
- Conspiracy to assassinate the President, in violation of 18 U.S.C. § 1751 (Count 7);
- Conspiracy to commit aircraft piracy, in violation of 49 U.S.C. § 46502(a)(2) (Count 8);
- Conspiracy to destroy aircraft, in violation of 18 U.S.C. § 32(b)(4) (Count 9).

See Abu Ali, 528 F.3d at 225. Both the 18 U.S.C. § 1751 conviction (conspiracy to assassinate the President) and the 49 U.S.C. § 46502(a)(2) conviction (conspiracy to commit aircraft piracy) rendered Abu Ali eligible for a life sentence. See 18 U.S.C. § 1751(d); 49 U.S.C. § 46502(a)(2)(B).

The district court began the first sentencing proceeding by calculating the applicable Guidelines range. Abu Ali's offenses and criminal history yielded a recommended sentence of life imprisonment, and the aircraft piracy charge carried a mandatory minimum twenty-year sentence. See 49 U.S.C. § 46502(a)(2)(A).

3

The district court then considered what sentence would be "sufficient, but not greater than necessary, to comply with" the other factors enunciated in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3553(a). Ultimately, the court determined that a below-Guidelines sentence was appropriate. It based this determination on several factors, among which was a comparison of Abu Ali's conduct to that of three individuals: John Walker Lindh (convicted of two charges in connection with his fighting for the Taliban in Afghanistan), Timothy McVeigh (convicted for perpetrating the Oklahoma City bombing), and Terry Nichols (convicted for conspiring with McVeigh).

Abu Ali subsequently appealed his convictions, and the government cross-appealed his sentence. While we affirmed Abu Ali's convictions, we concluded that the district court erred in imposing the sentence that it did. In particular, we determined that the comparisons that had driven the court's sentencing analysis were inappropriate. The reasons for that conclusion were extensively set forth in our prior opinion, see Abu Ali, 528 F.3d at 262-65, and we need not repeat them here.

On resentencing, the district court reiterated some of the same findings as before, but changed its view on three of the § 3553(a) factors. First, the court reweighed the need "to protect the public from future crimes of the defendant." 18 U.S.C. § 3553(a)(2)(c). The court concluded that a term of

4

years sentence would not be sufficient to protect the public from future crimes by Abu Ali in light of his admission to "participating in the planning of heinous and potentially catastrophic crimes to be committed against the United States citizenry," his confession to being "willing to be a martyr for this cause," and his unwillingness to "make any statement expressing any remorse."

Second, the court reweighed "the kinds of sentences available." 18 U.S.C. § 3553(a)(3). The district court observed that thirty years in prison would "impact [Abu Ali's] mental and physical health, functioning and capacity," and make it difficult for him "to transition into a functioning society 30 years from now that will have essentially moved on without him." The court then made the following statement:

> Therefore, when the Court considers Mr. Abu Ali's demonstrated unwillingness to renounce the beliefs that led him to participate in terrorist activities as well as the dire conditions in which he would be released, the unknowns about his mental state, his ability to [assimilate] and whether . . . we should assume that he would mature out of his prior confession and desire to martyrdom, there's simply no way for the Court to know what Mr. Abu Ali's mental state would be after 30 years of solitary confinement.
> The risk . . . of the unknown from a term of years sentence is too great in this case. I cannot put the safety of [the] American citizenry at risk. Nothing in three years has come forward to address this concern.
> I am not persuaded that a lengthy term of supervised release following a term of years could or would be a sufficient measure to protect [against] the risk of recidivism.

Finally, the court reconsidered its prior findings regarding "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The court made the following determination:

> Three years have passed since the original sentencing in this case and this is a singular case. I now regret that the Court of Appeals interpreted my original judgment to be an attempt to compare Mr. Ali to anyone. So I will not do that in this resentencing.
> My original sentencing orders addressed each of the factors in a number of words and my judgment from the bench and from my opinion did not drive the sentence. The defense has properly pointed out . . . a number of terrorism cases where sentences of less than life have been imposed.
> I acknowledge that there have been a number of post-trial terrorism cases where sentences [of] less than life were imposed by trial judges.
> I am constrained by the Court of Appeals' search for a benchmark case that is substantial[ly] similar in every respect to Mr. Abu Ali's case. Such a case does not exist.
> Even if there were such a case, I do not think a district judge is bound to impose a judgment in a case based upon what another judge did in another court because as Justice Stevens from the Supreme Court has acknowledge[d, the] work of sentencing involves individualized consideration of each case by the trial judge who heard the case. And there is no legal error in different judges reaching different sentences for the individual case.

(internal quotations omitted). The court thus determined that the Guidelines sentence of life imprisonment was appropriate.

II.

Abu Ali's primary contention on appeal is that his sentence was both procedurally and substantively unreasonable.

A.

As the Supreme Court has made clear, the overarching principle behind "'reasonableness' review" is that all sentences should be examined under a "deferential abuse-of-discretion standard," regardless of whether they are inside or outside the prescribed Guidelines range. Gall v. United States, 552 U.S. 38, 41, 46 (2007).

In Gall, the Court set forth the precise steps involved in reviewing a sentence for reasonableness. First, an appellate court should review a sentence for "procedural" reasonableness, ensuring that the district court committed "no significant procedural error" such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Id. at 51; see United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009).

Next, the court should examine the "substantive reasonableness of the sentence imposed" under "the totality of the circumstances." Gall, 552 U.S. at 51. A sentence falling

7

within a correctly calculated Guidelines range may be presumed reasonable on appeal.  Id.; see Rita v. United States, 551 U.S. 338, 347 (2007); United States v. Johnson, 445 F.3d 339, 341 (4th Cir. 2006) (applying such a presumption in the Fourth Circuit).  But while the reviewing court may "consider the extent of the deviation," a non-Guidelines sentence is not presumptively unreasonable.  Gall, 552 U.S. at 51.  In either case, we must apply the abuse of discretion standard to "give due deference to the district court's decision"; the fact that we "might reasonably have concluded that a different sentence was appropriate" does not itself provide a sufficient basis for reversal.  Id.; see United States v. Pauley, 511 F.3d 468, 473-74 (4th Cir. 2007).

    With these principles in mind, we turn to reviewing Abu Ali's challenges to his sentence.


B.

    We first consider Abu Ali's argument that the district court committed a "significant procedural error" at resentencing by refusing to consider 18 U.S.C. § 3553(a)(6).  Gall, 552 U.S. at 51.  While Abu Ali presented evidence of allegedly comparable cases under § 3553(a)(6), he argues that the court "eliminated that factor from consideration altogether."  In making this argument, Abu Ali relies on certain statements made by the

district court at the resentencing hearing, chief among which is the following:

> Three years have passed since the original sentencing in this case and this is a singular case. I now regret that the Court of Appeals interpreted my original judgment to be an attempt to compare Mr. Ali to anyone. So I will not do that in this resentencing.

Abu Ali further contends that the court ignored § 3553(a)(6) because of its erroneous belief that it could only consider cases that are "substantial[ly] similar in every respect to Mr. Abu Ali's case."

It is clear, however, that the district court adequately considered § 3553(a)(6) even over and above its calculation and consideration of the applicable Guidelines range. For one thing, the district court explicitly stated that it had "considered all of the 3553(a) factors." Moreover, the district court noted that "[t]he defense has properly pointed out . . . a number of terrorism cases where sentences of less than life have been imposed," and further observed the "number of post-trial terrorism cases where sentences [of] less than life were imposed by trial judges." (emphasis added). Ultimately, however, the court concluded that "this is a singular case" and that there was no "substantial[ly] similar" benchmark case to which to compare Abu Ali's. But neither that conclusion nor the supporting analysis evince "complete[ ] disregard[ ]" for

9

§ 3553(a)(6); instead, the district court considered the comparators presented by Abu Ali before concluding that his case was without peer.

In that light, it is helpful to contrast this case with United States v. Clark, 434 F.3d 684 (4th Cir. 2006), a case on which Abu Ali relies. In Clark, we reversed the district court's sentencing determination based on the court's failure to consider 18 U.S.C. § 3553(a)(6). See Clark, 434 F.3d at 685. But Clark is a far cry from this case. There, the district court did not mention § 3553(a)(6). See id. at 686. Moreover, the only "unwarranted sentencing disparities" the Clark court considered were the disparities between Clark and similarly situated state defendants, notwithstanding the fact that "[t]he sole concern of section 3553(a)(6) is with sentencing disparities among federal defendants." Id. at 687 (emphasis omitted). Here, by contrast, the court discussed § 3553(a)(6) and took note of the allegedly comparable federal cases brought forth by Abu Ali before concluding that his case was "singular." Rather than supporting Abu Ali's position, Clark confirms the reasonableness of the district court's approach here.

Abu Ali's final argument on the procedural front is that the district court erred in observing that it was "constrained by the Court of Appeals' search for a benchmark case that is substantial[ly] similar in every respect to Mr. Abu Ali's case."

10

According to Abu Ali, this statement shows that the district court "incorrectly interpreted this Court's ruling" as requiring cases "essentially identical to Mr. Abu Ali's" for purposes of § 3553(a)(6). Abu Ali is incorrect. The district court never required comparator cases to be "essentially identical"; instead, it stated merely that it was looking for a "substantial[ly] similar" case. By its own terms, § 3553(a)(6) commands judges to consider "the need to avoid unwarranted sentence disparities among defendants with <u>similar</u> records who have been found guilty of <u>similar</u> conduct." 18 U.S.C. § 3553(a)(6) (emphasis added). It would be quite a stretch to argue that the district court abused its discretion by interpreting that statutory mandate to require "substantial[ ] similar[ity]." To reach such a conclusion, we would have to put dispositive weight on whatever shadowy differences might lie between § 3553(a)(6)'s requirement of "similar records" and "similar conduct" and the district court's search for a "substantial[ly] similar" case. But nothing in <u>Gall</u> or <u>Rita</u> forces us to engage in such wordplay; to the contrary, those cases require us to eschew microscopic scrutiny of the district court's reasoning.

At bottom, Abu Ali's arguments about procedural reasonableness do not stem from actual errors committed by the district court, but from Abu Ali's substantive disagreements

11

with the district court's decisions.  But even assuming we shared those disagreements, <u>Gall</u> makes clear that they would still not provide any basis for overturning Abu Ali's sentence as procedurally unreasonable.  <u>See</u> <u>Gall</u>, 552 U.S. at 51 ("The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.").  We therefore reject Abu Ali's challenge on this score.

C.

We next consider Abu Ali's claim that his sentence was substantively unreasonable insofar as it was dramatically longer than other terrorism sentences imposed since September 11, 2001 and thus created an unwarranted sentencing disparity under § 3553(a)(6).  In pressing this argument below, Abu Ali presented evidence from more than twenty allegedly comparable cases where defendants received sentences ranging from 57 months to 30 years' imprisonment.  In addition, Abu Ali brought forth a study chronicling the average sentences meted out for terrorism-related offenses.  According to the study, the average sentence for a defendant convicted of a terrorism charge is approximately 12 years and 8 months.

Based on this evidence, however, we cannot conclude that the district judge abused its discretion in sentencing Abu Ali

to life imprisonment.  First, 19 of the 25 defendants discussed by Abu Ali pled guilty to their crimes of conviction.  As we observed in Abu Ali's first appeal, defendants sentenced pursuant to a plea agreement are not necessarily similarly situated to defendants sentenced after trial.  See Abu Ali, 528 F.3d at 263.  That is especially true where, as here, the defendant refused to express remorse or accept responsibility for his crimes.

Second, Abu Ali was convicted of two offenses that made him eligible for a life sentence: conspiracy to assassinate the President in violation of 18 U.S.C. § 1751 and conspiracy to commit aircraft piracy in violation of 49 U.S.C. § 46502(a)(2).  See 18 U.S.C. § 1751(d); 49 U.S.C. § 46502(a)(2)(B).  By contrast, only one of the twenty-five federal defendants Abu Ali cites as comparable was convicted of an offense carrying a potential life sentence.  Abu Ali's crimes of conviction are thus more severe than those committed by the defendants in the cases he brought forth.

Finally, Abu Ali's conduct was different in degree and kind from the conduct of his proposed comparators.  Abu Ali conspired to commit acts on our nation's soil that would inflict massive civilian casualties, acts that ranged from plotting attacks on nuclear power plants to hijacking airplanes with the intent to replicate the attacks of September 11, 2001.  Further, Abu Ali

13

conspired to cripple the United States government by assassinating members of the Senate, the Army, the Executive Branch, and even the President himself. In short, as the trial court noted, Abu Ali sought to inflict harm of a singular sort.

By contrast, the defendants Abu Ali cites as comparable committed offenses that were more limited in scope and severity. Several of the defendants, for example, attended al Qaeda training camps with the goal of learning terrorism tactics or traveled to Afghanistan or Iraq in order to aid the war effort against the United States. Others committed even more serious offenses, from conspiring to destroy the Brooklyn Bridge to abetting the purchase of a missile intended to be used in an attack against New York City. We by no means seek to underplay these destructive and reprehensible acts, but note that none of the cases Abu Ali wants to use as comparators involved a conspiracy to kill countless civilians and visit harm upon the highest officials of our government. As the First Circuit has observed, for any given case, there is "a range of reasonable sentences," and an appellate court should only reverse when the "sentencing court's ultimate determination falls outside the expansive boundaries of that universe." United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). The district court's sentence was well within the range of reasonableness here.

D.

While Abu Ali's arguments focus entirely upon his analysis of § 3553(a)(6), it is well that we not lose sight of the sentencing process as a whole. After all, § 3553(a)(6) is just one of many factors that the district court should consider before imposing a sentence. Here, the district court correctly calculated the applicable Guidelines sentence of life imprisonment. The court then analyzed the § 3553(a) factors, taking account of the seriousness of Abu Ali's offense, his history and characteristics, the kinds of sentences available, the need to deter future criminal conduct, the need to protect the public from further crimes by Abu Ali, and the need to impose a sentence that promotes respect for the law and provides just punishment. See 18 U.S.C. § 3553(a)(1)-(3). Additionally, the court evaluated Abu Ali's sentence under § 3553(a)(6), concluding that his case was "singular" and that his proposed comparators were inapposite. In light of all these considerations, the court concluded that a life sentence was appropriate.

Viewing the case holistically, we cannot say that the district judge abused its discretion. The court adequately considered the relevant § 3553 factors – including § 3553(a)(6) – and determined that the Guidelines sentence of life imprisonment was proper. It then explained its decision in a

15

sentencing order that discussed the salient § 3553(a) factors in a particular, not a generic, fashion.  On appeal, we may presume Guidelines sentences to be reasonable, and the district court's conduct affords no reason to overturn that presumption in this case.  See Johnson, 445 F.3d at 341.

III.

Abu Ali's remaining arguments stem from his constitutional challenges to the district court's sentencing determination.

A.

First, Abu Ali argues that the district court increased his sentence as a penalty for exercising his Sixth Amendment right to a jury trial and his Fifth Amendment right to remain silent. It is true that a court may not penalize a defendant for exercising his constitutional rights, but that is not what happened here.  The comments Abu Ali objects to reflect the district court's consideration of Abu Ali's lack of remorse and his unwillingness to accept responsibility for his crimes. Courts have routinely considered such factors in sentencing, and rightly so: a defendant's unwillingness to acknowledge responsibility and express regret reflect directly on the likelihood of recidivism, and the danger a defendant might pose to others if released.  See, e.g., United States v. Cruzado-

16

<u>Laureano</u>, 527 F.3d 231, 237 (1st Cir. 2008) (district court's consideration of a defendant's lack of remorse did not "violate[ ] his constitutional right to maintain his innocence" because "it is well established that lack of remorse is a proper consideration in sentencing"); <u>United States v. Johnson</u>, 903 F.2d 1084, 1090 (7th Cir. 1990) (same).

The district court adhered to these established sentencing principles in deciding to impose a life sentence on Abu Ali. After all, Abu Ali refused to acknowledge his crimes even after a jury had found him guilty beyond a reasonable doubt and, in the district court's words, never once recanted his "previously-confessed desire to commit terrorist acts and desire to achieve martyrdom." When given the opportunity to allocute before imposition of sentence, Abu Ali appeared, if anything, more firmly committed to the course that brought him into the criminal justice system. In view of this, the district court reasonably concluded that Abu Ali would remain a threat to society if released from prison after a term of years.

## B.

Finally, Abu Ali contends that his sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment. Abu Ali is currently incarcerated in a maximum security facility. At resentencing, Abu Ali presented evidence regarding

17

the negative physiological and psychological effects that stem from spending protracted periods of time in such a facility. He argues that it would violate the Eighth Amendment to sentence a prisoner to a longer term of years on the theory that his conditions of confinement will make him unfit to rejoin society at an earlier date.

Before imposing sentence, the district court made the following observations:

> Most certainly 30 years of incarceration under such restricted conditions would impact [Abu Ali's] mental and physical health, functioning and capacity. Without a doubt, Mr. Abu Ali will struggle to transition into a functioning society 30 years from now that will have essentially moved on without him. He will be released into a world that will bear only a limited resemblance to the world he left behind, a world with little if any friends or family left to support him at the end of 30 years. He will be a middle aged man with no skills, experiences or social network.
> Therefore, when the Court considers Mr. Abu Ali's demonstrated unwillingness to renounce the beliefs that led him to participate in terrorist activities as well as the dire conditions in which he would be released, the unknowns about his mental state, his ability to [assimilate] and whether . . . we should assume that he will mature out of his prior confession and desire to martyrdom, there's simply no way for the Court to know what Mr. Abu Ali's mental state would be after 30 years of solitary confinement.
> The risk . . . of the unknown from a term of years sentence is too great in this case. I cannot put the safety of [the] American citizenry at risk.

Viewing these statements as a whole, it is apparent that the court did not impose a life sentence to penalize Abu Ali for the effects of his confinement. The court only discussed Abu Ali's

18

"mental state" in the context of weighing his chances of rehabilitation against the risks of recidivism. The court properly considered the tenacity of Abu Ali's violent beliefs and the likelihood that time in prison would entrench those beliefs in analyzing the probability that Abu Ali would again act on those beliefs if released. In light of Congress's instruction for courts to consider the need to "protect the public from further crimes of the defendant" in imposing a sentence, it is hard to see how the district court's actions were erroneous. See 18 U.S.C. § 3553(a)(2)(C). The court's decision to impose a life sentence was therefore the product of run-of-the-mill sentencing analysis, not some novel form of Eighth Amendment violation.

IV.

In sum, the resentencing in this case proceeded within well-established boundaries and reveals no abuse of discretion on the part of the district court. For the foregoing reasons, we affirm the judgment.

AFFIRMED

19